IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RICHARD CARLTON RISHER,       )
                              )
    Plaintiff,                )
                              )
v.                            )       No. 08-2249
                              )
UNITED STATES OF AMERICA,     )
                              )
    Defendant.                )

## MEMORANDUM OPINION AND ORDER

Before the Court is an action by Plaintiff Richard Carlton
Risher ("Risher") against Defendant United States of America
(the "Government") under the Federal Tort Claims Act ("FTCA"),
28 U.S.C. § 1346(b).  (Compl. ¶ 1, ECF No. 1.)  Risher argues
that the Government is liable for injuries he suffered when he
fell at the Federal Correctional Institution in Memphis ("FCI-
Memphis") on April 22, 2007.  (See id.  ¶¶ 7-11; Pl.'s Proposed
Findings of Fact and Conclusions of Law 1, ECF No. 69 ("Pl.'s
Br."); Trial Tr. 7:22-9:8, Sept. 20, 2010, ECF No. 74 ("Tr.").)

A bench trial was held on September 20, 2010.  (Tr. 1.)
After the trial, Risher and the Government submitted proposed
findings of fact and conclusions of law.  (Pl.'s Br.; Findings
of Fact and Conclusions of Law Proposed by Def., ECF No. 73.)
For the following reasons, the Defendant prevails.

**I.  Jurisdiction and Choice of Law**

Under 28 U.S.C. § 1346(b)(1), district courts have exclusive jurisdiction over civil actions against the Government under the FTCA.  See 28 U.S.C. § 1346(b)(1); Singleton v. United States, 277 F.3d 864, 872 (6th Cir. 2002).  Under the FTCA, the Government waives its sovereign immunity and may be liable:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); see Premo v. United States, 599 F.3d 540, 544 (6th Cir. 2010).

Before suing the Government, a plaintiff must present his claim to the appropriate federal agency and his claim must be "finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a); see McNeil v. United States, 508 U.S. 106, 113 (1993).  "The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of [the exhaustion requirement]."  28 U.S.C. § 2675(a).

Here, Risher filed a claim against the Government with the appropriate federal agency, the Federal Bureau of Prisons, on

August 9, 2007. See McNeair v. Snyder, 7 F. App'x 317, 319 (6th Cir. 2001); (Compl. ¶¶ 3-4.) The Federal Bureau of Prisons finally denied Risher's claim by letter more than six months later on April 15, 2008. (See Mot. to Amend Compl. 1, 3, ECF No. 4.) Therefore, Risher has satisfied the exhaustion requirement. See 28 U.S.C. § 2675(a); Blakely v. United States, 276 F.3d 853, 864 (6th Cir. 2002); Demonbreum v. Bureau of Prisons, No. 08-198-ART, 2009 WL 3666641, at *3-4 (E.D. Ky. Oct. 30, 2009). This Court has jurisdiction over Risher's action against the Government for money damages for injuries allegedly caused by prison officials' negligence in maintaining the grounds at FCI-Memphis. See 28 U.S.C. § 1346(b)(1); Witkop v. United States, No. 09-2156, 2010 WL 3245550, at *1 (6th Cir. Aug. 16, 2010); CNA v. United States, 535 F.3d 132, 141 (3d Cir. 2008).

"In analyzing claims brought pursuant to the FTCA, a court must apply the substantive law of the state in which the incident occurred . . . ." Shipp v. United States, 212 F. App'x 393, 397 (6th Cir. 2006) (citations omitted); see FDIC v. Meyer, 510 U.S. 471, 478 (1994). Because the Government allegedly acted negligently in Tennessee and Risher suffered injuries in Tennessee, Tennessee substantive law governs Risher's action. See Premo, 599 F.3d at 545; Shipp, 212 F. App'x at 397; see also Richards v. United States, 369 U.S. 1, 9-10 (1962).

3

## II. Findings of Fact

Risher is an inmate at FCI-Memphis. (See Tr. 39:16-17.) In April 2007, the Government was installing new telephone lines to Risher's housing unit. (See id. 18:10-18, 23:16-17, 87:24-88:24.) The installation required the Government to remove sidewalks, dig trenches, lay pipe and cable, fill in the trenches, and pour new sidewalks on top of the filled-in trenches. (See id. 88:2-89:7.) On Wednesday, April 18, 2007, Government workers began the installation in front of Risher's unit. (See id. 88:25-89:13.) By Friday, April 20, the Government had removed the sidewalk in front of Risher's unit and laid pipe. (Id. 89:3-4; see id. 22:11-17, 35:19-22.) Before ending work on Friday, the Government barricaded the resulting hole with caution tape to warn inmates of the hole, and at some point before the weekend put plywood boards across the hole to create a path to and from Risher's unit. (See id. 23:18-25, 90:9-13.) It rained on Saturday, April 21, and the tape and boards had become mired in mud by Sunday, April 22. (See id. 23:21-25, 26:24-27:2, 37:2-38:18, 46:11-12, 47:23-24.)

On Sunday, inmates and staff had access to Risher's housing unit by crossing a corner of the hole. (See id. 32:18-33:9.) At that corner, people could enter and leave the unit by taking normal steps from a patch of grass to a concrete patio in front of the unit. (See id. 33:6-25.) The grass and the concrete

4

were at the same elevation, and the hole was between six and eight inches deep and contained no debris. (See id. 27:6-9, 33:23-25, 34:16-18.) Having taken that path several times during the week, Risher was aware of it. (See id. 34:9-12.)

At approximately 2:10 p.m. on Sunday, April 22, 2007, Risher was returning to his unit. (See id. 19:1-2, 44:6-8.) The weather was partly cloudy and sunny. (See id. 27:3-5.) John Newman ("Newman"), a senior correctional officer, was standing on the concrete patio in front of Risher's unit. (See Trial Ex. 1; Tr. 17:15-18, 20:8-14, 47:13-14.) Risher was experiencing severe pain in his right leg at the time and could not take large steps, but did not ask Newman for assistance in crossing. (See Tr. 44:23-45:8.)

Rather than crossing at the corner where others had been crossing, Risher approached the hole at an area where it was between ten and twelve inches deep and contained pieces of concrete and rock. (See id. 27:6-12, 34:1-19.) He stopped between ten and fifteen seconds, stepped into the hole, and tripped over rocks. (See id. 21:9-13, 34:20-25.)[1] Risher fell to his right onto a pile of concrete. (Id. 46:13-16.) He tried to break his fall with his arm, but was not successful. (See

---

[1] Risher testified that he stopped in front of the hole, prepared to cross, and fell when the gravel on which he was standing collapsed. (See Tr. 44:19-22.) However, the photographs do not show gravel that could collapse at any place outside the hole. (See Trial Ex. 2; Trial Ex. 3.)

id. 48:10-13.)  After the fall, he felt great pain in his leg, back, and neck, and could not move.  (See id. 47:1-12.)

Newman saw Risher fall and called the compound and operations lieutenant to report the fall.  (See id. 19:3-4, 29:15-17.)  Prison officials arrived, lifted Risher onto a golf cart used as a hospital ambulance, and transported him to the prison's clinic.  (See id. 29:14-21.)  At the clinic, a nurse gave him pain medicine and ordered seven x-rays.  (Id. 48:5-8.) Risher did not have visible injuries to his hand or his right shoulder.  (See id. 128:1-130:2.)  Dr. Nahem Naimey ("Dr. Naimey") saw Risher the next day, cancelled six of the x-rays, and ordered an MRI of his shoulder.  (See id. 49:22-50:10.)  An x-ray of Risher's knee showed no injuries.  (See Trial Ex. 22; Tr. 133:3.)  The MRI taken in August 2007 showed that Risher had a torn rotator cuff in his right shoulder.  (See id. 50:11-12, 51:3-4, 135:13-14; Trial Ex. 23.)

Before the April 22, 2007 fall, Risher had a long history of medical problems with his shoulder.  On May 25, 2006, Risher completed an Inmate Sick Call-In Sheet on which he reported pain in his right shoulder, back, and right leg, described his pain as between nine and ten on a scale of one to ten (with ten as the most severe), and circled the word "intolerable" to the right of the scale.  (See Tr. 68:7-22; Trial Ex. 4.)  On June 29, 2006, Risher reported that he had intolerable right shoulder

6

pain.  (See Tr. 69:13-24; Trial Ex. 5.)  He made similar reports
of severe right shoulder pain on July 5, 2006; July 6, 2006;
July 10, 2006; August 8, 2006; August 21, 2006; and August 28,
2006.  (See Trial Ex. 6; Trial Ex. 7; Trial Ex. 8; Trial Ex. 9;
Trial Ex. 10; Trial Ex. 11.)  He also complained of a limited
range of motion in his right arm on August 8, 2006, and August
21, 2006.  (See Trial Ex. 9; Trial Ex. 10.)

   Before the fall, Risher had met periodically with Dr.
Naimey.  Risher told Dr. Naimey he had right shoulder pain on
April 17, 2007.  (Tr. 118:12-14.)  On March 15, 2007, Risher
complained of chronic lower back pain radiating to his lower
leg.  (Id. 118:22-119:5.)  On February 6, 2007, Risher
complained of lower back pain.  (Id. 119:13-17.)  On December 4,
2006, Risher complained of chronic lower back and right shoulder
pain.  (Id. 119:18-23.)  On October 20, 2006, Risher complained
of right shoulder pain.  (Id. 119:24-120:1.)  On October 10,
2006, Risher complained of discomfort and swelling in his
shoulder.  (Id. 122:4-24.)  On September 20, 2006, Risher
complained of lower back pain.  (Id. 122:25-123:3.)  On August
22, 2006, Risher complained of right shoulder pain.  (Id. 123:4-
6.)  On June 5, 2006, Risher complained of chronic back pain and
right shoulder pain.  (Id. 123:7-10.)  On May 12, 2006, Risher
complained of right shoulder pain, lower back pain, and right
hip pain.  (Id. 123:11-13.)  On April 4, 2006, Risher complained

of right shoulder pain and said he had heard a snapping sound in the area around his joints. (See id. 123:14-17.) On February 7, 2006, Risher complained of lower back pain. (Id. 123:18-20.) On November 29, 2005, Risher complained of chronic lower back pain. (Id. 123:21-24.) On January 8, 2004, Risher reported he had been suffering from right shoulder discomfort for three or four months. (Id. 124:2-4.) Risher also complained of right shoulder pain on April 30, 2001 (id. 124:7-9); right shoulder, left shoulder, and back pain on October 1, 2000 (id. 124:10-15); and right hip and right shoulder pain on September 18, 2000 (id. 124:16-21).

In Dr. Naimey's opinion, Risher's fall did not cause his rotator cuff to tear. (See id. 135:13-17, 140:18-22, 160:21-161:2.) Dr. Naimey concluded that the most likely origin of the torn rotator cuff was a fracture of the clavicle in 2000. (See id. 139:10-16, 140:20-22, 160:21-161:2.) Having treated Risher before and after the fall, Dr. Naimey opined that the fall did not change Risher's physical limitations. (See id. 144:9-14.)

Risher offered his own testimony and the testimony of Dr. Eduardo V. Cruz ("Dr. Cruz"). According to Risher, his range of motion decreased after the fall, and he has difficulty lifting and carrying objects. (See id. 51:11-15, 52:18-22, 53:6-15.) He is scheduled to be released in 2011 (id. 53:16-21) and is concerned that, because of his diminished range of motion, he

will have difficulty finding work (see id. 54:16-55:17, 56:5-10).

Dr. Cruz's deposition testimony was admitted at trial. (Id. 82:4-6.) He testified that, in his opinion based on a medical examination of Risher on December 21, 2009, and a review of Risher's medical records, Risher's fall on April 22, 2007, probably aggravated preexisting shoulder and back injuries and injured Risher's right knee. (See Trial Ex. 12, at 8:5-15, 10:9-14, 16:1-4.) However, Dr. Cruz testified that he could not determine whether it was probable or possible that the fall caused Risher's torn rotator cuff. (See id. 31:5-7.) He thought that the causation was "somewhere between possible and probable." (Id. 31:8-11.) He also testified that there were no restrictions on Risher's activities (see id. 27:2-5), but inconsistently testified later that Risher would have restrictions (see id. 27:22-28:1). Dr. Cruz testified that he could not say how much or whether Risher's torn rotator cuff was caused by a prior injury. (See id. 23:19-24:2.) When asked if he saw Risher exaggerating symptoms during the examination, Dr. Cruz said, "Not particularly because I couldn't really determine whether he was faking for example." (Id. 34:23-24.) A physician who examined Risher in 2002 found that Risher exaggerated his symptoms and had "a tendency to give away intentionally on muscle testing in the right foot." (Trial Ex.

25, at 1-2; see Trial Ex. 26, at 1 (stating that "[t]he clinical picture is one of magnification and exaggeration of his symptoms").)

Because of the contradiction in Dr. Cruz's testimony, his inability to say whether Risher's fall probably caused his torn rotator cuff, his uncertainty about whether a prior injury caused Risher's torn rotator cuff, his lack of knowledge about whether Risher's symptoms were genuine, and his relatively limited time examining Risher compared to Dr. Naimey, the Court finds Dr. Naimey's testimony more reliable than Dr. Cruz's testimony.

### III. Conclusions of Law

"The FTCA allows suit by a federal prisoner for personal injury suffered as the result of employee negligence." Flechsig v. United States, 991 F.2d 300, 303 (6th Cir. 1993) (citing United States v. Muniz, 374 U.S. 150, 164-65 (1963)). Under 18 U.S.C. § 4042(a), the Bureau of Prisons has a duty to "provide suitable quarters and provide for the safekeeping, care, and subsistence" and to "provide for the protection" of federal prisoners. 18 U.S.C. §§ 4042(a)(2)-(3); Montez ex rel. Estate of Hearlson v. United States, 359 F.3d 392, 396 (6th Cir. 2004). That duty requires prison officials "to use ordinary care to protect prisoners from unreasonable risks, not to provide them with a risk free-environment." Clay v. United States, No. 05-

CV-599-KKC, 2007 WL 2903105, at *9 (E.D. Ky. Sept. 28, 2007) (citations omitted); see Dunne v. United States, No. 92-2842, 1993 WL 74311, at *2 (7th Cir. Mar. 9, 1993) ("Correctional official are . . . expected to use ordinary care to protect prisoners from unreasonable risks, not to provide them with a risk-free environment.") (citations omitted); Flechsig v. United States, 786 F. Supp. 646, 649 (E.D. Ky. 1991) (stating that, under 18 U.S.C. § 4042, the Government "has a duty to exercise ordinary diligence to keep inmates safe and free from harm"), aff'd, 991 F.2d 300 (6th Cir. 1993).

The law of the state where the allegedly tortious conduct occurred governs whether the Government has breached its duty and is liable. See Friedman v. United States, No. 99-1445, 2000 WL 876391, at *3 (6th Cir. June 21, 2000); Young v. United States, 71 F.3d 1238, 1242 (6th Cir. 1995) (citations omitted); Flechsig, 991 F.2d at 303-04 (citation omitted). Under Tennessee law, plaintiffs must prove five elements to prevail on a negligence claim: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." Rice v. Sabir, 979 S.W.2d 305, 308 (Tenn. 1998) (citing Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993)).

Here, Risher's action against the Government fails because he was more at fault than the Government for his injuries, the Government did not breach its duty to him, and he has not proven that the fall on April 22, 2007 caused any injuries.

**A.  Risher's Fault Exceeds the Government's Fault**

Tennessee has adopted a system of modified comparative fault under which plaintiffs must be less than fifty percent at fault in causing their injuries to recover on negligence claims.[2] See Ali v. Fisher, 145 S.W.3d 557, 561 (Tenn. 2004) (citing McIntyre v. Balentine, 833 S.W.2d 52, 57 (Tenn. 1992)); Westervelt v. State, No. M2006-00766-COA-R3-CV, 2007 WL 1159345, at *1 (Tenn. Ct. App. Sept. 17, 2007).  That a plaintiff suffers an injury from an open and obvious hazard on a defendant's property does not necessarily preclude recovery.  See Kenning v. HCA Health Servs. of Tenn., Inc., No. M1998-00482-COA-R3-CV, 1999 WL 1206697, at *3 (Tenn. Ct. App. Dec. 17, 1999).  The openness and obviousness of a hazard matters, however, to the extent a plaintiff is at fault in causing his injury.  See Reed v. McDaniel, No. W2009-01348-COA-R3-CV, 2010 WL 623619, at *5-6 (Tenn. Ct. App. Feb. 23, 2010) (concluding that, because the

---

[2] State law applied in FTCA actions includes state law on comparative fault, contributory negligence, and assumption of the risk.  See Spence v. United States, 374 F. App'x 717, 718 (9th Cir. 2010) (affirming summary judgment for the United States on a plaintiff's FTCA action based on California's assumption of risk doctrine); Cary v. United States, 343 F. App'x 926, 927 (4th Cir. 2009) (per curiam) (stating that Virginia law on contributory negligence applied to a plaintiff's FTCA action); Martinez v. United States, 780 F.2d 525, 530-31 (5th Cir. 1986) (stating that comparative fault principles may apply to a plaintiff's FTCA claim).

plaintiff suffered injuries from walking across floor that he knew was rotten, the plaintiff was primarily responsible for his injuries and barred from recovering on his negligence claim); Sanders v. CB Richard Ellis, Inc., No. W2007-02805-COA-R3-CV, 2008 WL 4366124, at *4-5 (Tenn. Ct. App. Sept. 22, 2008) (concluding that, because a plaintiff suffered injuries from walking on a parking lot he knew was covered by ice, Tennessee's modified comparative fault system barred the plaintiff from recovering on his negligence action).

Here, Risher suffered injuries when, instead of crossing a hole in front of his housing unit at the corner where he and other people had crossed by taking normal steps between level elevations across a six to eight inch deep part of the hole containing no debris, he decided to cross the hole where it was between ten and twelve inches deep and contained pieces of concrete and rock. (See Tr. 27:3-12, 32:18-34:12, 34:16-19.) The weather was partly cloudy and sunny (id. 27:3-5), giving Risher a clear view of the hole. Before attempting to cross, Risher stopped between ten and fifteen seconds and looked into the hole. (See id. 21:9-13, 34:20-25.) He examined the hole before deciding to enter it, rather than taking the path he had safely used at the hole's corner. He claims he was in great pain when he approached the hole (see id. 44:23-45:8), but he did not ask for assistance from Newman, a correctional officer

standing on the other side (<u>see</u> Trial Ex. 1; Tr. 17:15-18, 20:8-14, 44:23-45:8, 47:13-14).

Risher was aware of an open and obvious hazard—a relatively deeper part of the hole containing pieces of concrete and rock—and an alternative to avoid the hazard, but he attempted to cross the hazard and fell. (<u>See</u> Tr. 46:13-16.) His conduct is essentially identical to conduct that bars recovery under Tennessee's modified comparative fault system. <u>See, e.g.</u>, <u>Sanders</u>, 2008 WL 4366124, at *4-5. In <u>Sanders</u>, the Tennessee Court of Appeals affirmed summary judgment for defendant where the plaintiff fell after deciding to cross a parking lot he knew was icy rather than using an open, available drive-through window. <u>See</u> <u>id.</u> at *1, 4-5. The Court of Appeals has similarly concluded that plaintiffs could not recover because of their comparative fault where they fell after choosing to trot over slippery pavement covered with ice and snow rather than walking slowly and carefully, <u>see</u> <u>Elrod v. Cont'l Apartments</u>, No. M2007-01117-COA-R3-CV, 2008 WL 425947, at *2-3 (Tenn. Ct. App. Feb. 13, 2008), to take two steps into a one-half-inch-deep puddle of water in a well-lighted bathroom where an eighteen-inch tall "wet floor" sign sat in the puddle, <u>see</u> <u>Easley v. Baker</u>, No. M2003-02752-COA-R3-CV, 2005 WL 697525, at *7-8 (Tenn. Ct. App. Mar. 24, 2005), and to walk across obviously rotten flooring, <u>see</u> <u>Reed</u>, 2010 WL 623619, at *5-6. Like the plaintiffs in

<u>Sanders</u>, <u>Elrod</u>, <u>Easley</u>, and <u>Reed</u>, Risher fell after disregarding a hazard and a safe alternative to that hazard. He is at least fifty percent responsible for his fall and cannot recover under Tennessee law. <u>See</u> <u>McIntyre</u>, 833 S.W.2d at 57; <u>Easley</u>, 2005 WL 697525, at *8.

### B. The Government Did Not Breach Its Duty

Under federal law, the Government owes a duty of ordinary care to federal prisoners to protect them against unreasonable risks to their safety. <u>See</u> 18 U.S.C. §§ 4042(a)(2)-(3); <u>Montez</u>, 359 F.2d at 396; <u>Clay</u>, 2007 WL 2903105, at *9. To prevail on a negligence claim, Tennessee law requires a plaintiff to prove "conduct by the defendant falling below the standard of care amounting to a breach of the duty." <u>Rice</u>, 979 S.W.2d at 308; <u>see</u> <u>Allen v. Sulcer</u>, 255 S.W.3d 51, 56 (Tenn. Ct. App. 2007) (citation omitted). If the risk of injury to a plaintiff is not foreseeable, however, there can be no breach of duty. <u>See</u> <u>Montgomery *ex rel.* Montgomery v. Kali Orexi, LLC</u>, 303 S.W.3d 281, 290 (Tenn. Ct. App. 2009); <u>cf.</u> <u>Doe v. Linder Constr. Co.</u>, 845 S.W.2d 173, 178 (Tenn. 1992) ("If the injury which occurred could not have been reasonably foreseen, the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability. [T]he plaintiff must show that the injury was a reasonably foreseeable probability, not just a remote possibility, and that

some action within the [defendant's] power more probably than not would have prevented the injury. Foreseeability must be determined as of the time of the acts or omissions claimed to be negligent.") (internal quotation marks and citations omitted).

Here, it was not foreseeable that Risher would attempt to cross the hole where it was between ten and twelve inches deep and contained pieces of concrete and rock, rather than at the corner where he and other people had crossed by taking normal steps between level elevations across a six to eight inch deep part of the hole containing no debris. (See Tr. 27:3-12, 32:18-34:12, 34:16-19.) The weather gave him a clear view of the hole, he examined the hole between ten and fifteen seconds before entering it, and he did not ask for assistance in crossing the hole from a nearby correctional officer despite being in pain. (See id. 17:15-18, 20:8-14, 21:9-13, 27:3-5, 44:23-45:8, 47:13-14.)

Under the circumstances, the Government could not have foreseen that Risher would attempt to cross the hole where and how he did, rather than taking the safe path at the hole's corner or seeking assistance. When defendants owe plaintiffs a duty of care and plaintiffs suffer injuries that defendants could not have foreseen, Tennessee courts conclude that plaintiffs cannot recover. See, e.g., Harvey v. Dickson Cnty., No. M2007-01793-COA-R3-CV, 2008 WL 2165958, at *1-4 (Tenn. Ct.

App. May 21, 2008) (affirming a grant of summary judgment against an inmate where the inmate suffered injuries from an unforeseeable attack by another inmate); Hanks v. State, No. 02A01-9810-BC-00295, 1999 WL 454459, at *1, 3-4 (Tenn. Ct. App. July 2, 1999) (concluding that an inmate could not recover in an action against Tennessee for injuries caused by another inmate's unforeseeably throwing a pan of hot grease on him because the prison did not breach its duty to use reasonable and ordinary care to prevent the attack). Because it was not reasonably foreseeable that Risher would choose to take a relatively unsafe path across the hole rather than the safe path at the corner that he and others had taken, the Government did not breach its duty to Risher and Risher cannot recover. See id. at 414-15; Dobson v. State, 23 S.W.3d 324, 331-32 (Tenn. Ct. App. 1999).

### C. Risher Has Not Proven Causation

Under Tennessee law, "[c]ausation is a distinct element of negligence, and '[n]o claim for negligence can succeed in the absence of' it." Rivers v. Nw. Tenn. Human Res. Agency, No. W2009-01454-COA-R3-CV, 2010 WL 1539838, at *5 (Tenn. Ct. App. Apr. 19, 2010) (quoting Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn. 1993)). "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." Kilpatrick, 868 S.W.2d at 598 (citations omitted). When "there is no causation in fact there can be no

proximate cause." <u>Doe v. Rogers</u>, No. 03A01-9606-CV-00212, 1997 WL 36834, at *2 (Tenn. Ct. App. Jan. 31, 1997) (citation omitted). To prevail, a plaintiff must prove cause in fact and proximate cause by a preponderance of the evidence. <u>See</u> <u>Kilpatrick</u>, 868 S.W.2d at 598 (citations omitted).

To prove causation of a medical condition, Tennessee courts require plaintiffs to offer testimony from a medical expert who is "reasonably certain" about the cause of the plaintiff's condition. <u>See</u> <u>Haines v. Henry Cnty. Bd. of Educ.</u>, No. W2008-02532-COA-R3-CV, 2010 WL 457502, at *7 (Tenn. Ct. App. Feb. 11, 2010) (citations omitted). "Such testimony is not sufficient to establish causation if it is speculative in nature." <u>Miller v. Choo Choo Partners, L.P.</u>, 73 S.W.3d 897, 901 (Tenn. Ct. App. 2001) (citation omitted). "A doctor's testimony that a certain thing is <u>possible</u> is no evidence at all." <u>Id.</u> at 902 (quoting <u>Lindsey v. Miami Dev. Corp.</u>, 689 S.W.2d 856, 862 (Tenn. 1985)). The Tennessee Supreme Court has stated:

> [P]roof of causation equating to a "possibility," a "might have," "may have," "could have," is not sufficient, as a matter of law, to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct by a preponderance of the evidence in a medical malpractice case. Causation in fact is a matter of probability, not possibility, and in a medical malpractice case, such must be shown to a reasonable degree of medical certainty.

<u>Kilpatrick</u>, 868 S.W.2d at 602 (citation omitted). In short, "the testimony must show, as a whole, that it is more probable

than not that the accident caused the injury." <u>Jackson v.</u>
<u>Allen</u>, No. M2000-01673-COA-R3-CV, 2002 WL 661930, at *2 (Tenn.
Ct. App. Apr. 23, 2002) (citations omitted).

Here, Risher contends that the April 22, 2007 fall caused
him to tear his rotator cuff. (<u>See</u> Pl.'s Br. 5.) The basis for
that contention is his testimony that his range of motion
decreased after the fall (<u>see</u> Tr. 51:11-15, 52:18-22, 53:6-15)
and Dr. Cruz's deposition testimony admitted at trial (<u>see</u> <u>id.</u>
82:4-6). To prove that the fall caused his rotator cuff to
tear, Risher must offer testimony from a medical expert who was
"reasonably certain" about the cause of his torn rotator cuff.
<u>See</u> <u>Haines</u>, 2010 WL 457502, at *7-8. Dr. Cruz testified,
however, that he could not determine whether it was probable or
possible that the fall caused Risher's torn rotator cuff and
that it was somewhere between the two. (<u>See</u> Trial Ex. 12, at
31:5-11.) He also testified inconsistently about whether there
were any restrictions on Risher's activities (<u>Compare</u> <u>id.</u> 27:2-5
(answering "Yes" when asked, "In your opinion, Doctor Cruz,
there are no restrictions on Mr. Risher's activities. Is that
right?"), <u>with</u> <u>id.</u> 27:21-28:1 (responding that "He's stable and
his injury is permanent, but because of the arthritis and the
tear, he's going to have restrictions, yes, limited function,"
when asked, "Is [Risher's] prognosis good in your view?").) Dr.
Cruz further testified that he could not say how much or whether

Risher's torn rotator cuff was caused by a prior injury (see id. 23:19-24:2) and could not determine whether Risher was exaggerating his symptoms (see id. 34:23-24).

In light of the contradiction in Dr. Cruz's testimony, his inability to say that Risher's fall probably caused his torn rotator cuff, his uncertainty about whether a prior injury caused Risher's torn rotator cuff, and his lack of knowledge about whether Risher's symptoms were genuine, Risher's evidence of causation is speculative. In contrast, Dr. Naimey's opinion that Risher's fall did not cause the injury to his rotator cuff appears well-supported. (See Tr. 135:13-17, 139:10-16, 140:18-22, 160:21-161:2.) Risher has not met his burden of establishing by a preponderance of the evidence that the fall was the cause in fact or proximate cause of his torn rotator cuff. See Kilpatrick, 868 S.W.2d at 598, 602.

Risher also contends that the fall aggravated his preexisting back pain. (See Pl.'s Br. 5.) His evidence is the same: his trial testimony and Dr. Cruz's deposition testimony. (See Tr. 51:11-15, 52:18-22, 53:6-15, 82:4-6.) That Risher suffered intolerable shoulder and back pain before the fall undermines his argument that the fall aggravated his back pain. (See Trial Exs. 4-11; Tr. 118:12-14, 118:22-119:5.) Because Dr. Cruz was uncertain about whether Risher was exaggerating his symptoms (see Trial Ex. 12, at 34:23-24), another physician who

examined Risher found that Risher exaggerated his symptoms (<u>see</u> Trial Ex. 25, at 1-2; Trial Ex. 26, at 1), and Risher suffered intolerable shoulder and back pain before the fall (<u>see, e.g.</u>, Exs. 4-11; Tr. 118:12-14, 118:22-119:5), Risher has not shown that the fall aggravated his back pain.   Therefore, Risher has not shown that the fall was the cause in fact or proximate cause of increased back pain.

## IV.  Conclusion

For the foregoing reasons, the verdict is for the Defendant, for which let judgment enter.

So ordered this 7th day of January, 2011.


s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE